**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LEE B. SMITH & DONNA GAGNON-SMITH, <br>     Plaintiffs, <br><br> v. <br><br> CITY OF MIDDLETOWN, ET AL., <br>     Defendants. | : <br> : <br> : <br> :   CIVIL ACTION NO. <br> :   3:09-CV-1431 (JCH) <br> : <br> : <br> :   SEPTEMBER 1, 2011 <br> : |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 27]**

**I.      INTRODUCTION**

Plaintiffs Lee B. Smith and Donna Gagnon-Smith bring this action against Robert P. Santangelo, a member of the Middletown Common Council, and the City of Middletown, for allegedly depriving the plaintiffs of their rights under the First Amendment, in violation of 42 U.S.C. §§ 1983, 1988.  Pending before the court is the defendants' Motion for Summary Judgment (Doc. No. 27).  For the reasons that follow, the court grants the defendants' Motion.

**II.     STANDARD OF REVIEW**

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party

against whom summary judgment is sought.  See Fed R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. National R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.' " Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008) (stating that a non-moving party must point to more than a mere " 'scintilla' " of evidence in order to defeat a motion for summary judgment) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).  In this case, there are no genuine issues of material fact to be tried, and the court is able to adjudicate the Motions for Summary Judgment as a matter of law.

## III.   FACTUAL BACKGROUND[1]

This case involves several changes in the rules governing public comment during the regular meetings of a town's legislative body.  Smith and Gagnon-Smith allege that they are residents of Middletown, Connecticut. Compl., ¶ 3.  The City is a municipal corporation in the State of Connecticut, and defendant Santangelo is a member of the

---

[1] Unless otherwise noted, no genuine dispute exists over the following facts.

2

Middletown Common Council ("Council"). Compl., at ¶ 4; Answer, at ¶ 4. The Council is the legislative body for the City. Def.'s Local Rule 56(a)(1) Statement ("Def.'s 56(a)(1)"), ¶ 1. The Council consists of twelve members, and the Council has the power, by majority vote, to adopt bylaws and ordinances for the conduct of the City of Middletown's business. Id. at ¶¶ 2-3. The City Charter provides that the Council is responsible for determining its own rules of procedure. Id. at ¶ 4.

Prior to October 2, 2006, the Council allowed members of the general public to speak on topics not on the meeting agenda before the segment of the meeting entitled "Questions to Directors." Id. at ¶ 9. This public hearing was televised. Id. On October 2, 2006, the Council adopted a new rule, Resolution No. 145-06, which moved the timing of the public hearing on non-agenda topics to the end of the Council meeting. Id. at ¶ 8. The resolution also terminated the video broadcast of the public hearing on non-agenda items. Id. After the passage of Resolution No. 145-06, the public was still allowed to address the Council on agenda items during the regular meetings of the Council. Id. at ¶ 11. Public comments on agenda items continued to be televised. Id. at ¶ 11. The Council's vote to pass Resolution No. 145-06 was unanimous. Id. at ¶ 18.

In November 2009, the Council altered its rules to move the "Questions to Directors" segment of the meeting to an hour before the start of the Council meeting. Id. at ¶ 36. After this rule change, the Questions to Directors were no longer televised. Id. The Council also discontinued the public hearing on non-agenda items at the end of Council meetings. Id. at ¶ 39. In its place, the Council created community public meetings that are held monthly at one of six rotating locations. Id. The community

3

meetings are devoted exclusively to public discourse with the Council on non-agenda issues. Id.

The central factual dispute between the parties revolves around the motivation for the rule changes governing public comment. The defendants have submitted affidavits from members of the Council indicating that they voted to move the public comment on non-agenda items to the end of the meeting in order to streamline the meetings. Id. at ¶¶ 14, 19-21, 23-24, 27. At least one member of the Council was concerned that members of the public were using the comment period to lecture rather than inform the Council, and that the public was addressing the cameras rather than the Council. Id. at ¶ 16. Council Member Gerald E. Daley indicated that he wanted the official business of the Council to be finished earlier in the evening, while more members of the public were still watching. Id. at ¶ 23. Council Member Elizabeth K. Novera stated that she wanted to allow the town's departmental directors to go home before the lengthy period of public comment. Id. at ¶ 21. Members of the Council also expressed their expectation that discontinuing the taping of the public comment would save town funds. Id. at ¶¶ 23, 26-28; Ex. E, ¶ 11. Defendants provide affidavits from 10 of the 12 members of the Council stating that their vote for Resolution No. 145-06 was not intended to prevent Smith or Gagnon-Smith from speaking publicly at Council meetings or meant to silence the Smiths. Id. at ¶ 29.

Smith and Gagnon-Smith argue, however, that this was precisely the motivation of the members of the Council. Plaintiffs assert that Santangelo admitted in a videotaped interview that the content of the plaintiffs' statements at Council meetings were the reason for the October 2, 2006 rule change. Pl.'s Local Rule 56(a)(2)

Statement ("Pl.'s 56(a)(2)"), Doc. No. 28, Ex. 1, at n.1.  Despite citing the video multiple times in their Local Rule 56(a)(2) Statement, the plaintiffs have not submitted the video.  However, the plaintiffs have submitted excerpts from their deposition transcripts in which they describe their recollection of what Santangelo said in the video.  The plaintiffs further assert that the "defendants do not dispute that [Santangelo] made the statements attributed to him . . . in the sworn deposition testimony of both plaintiffs."  Id.

According to the plaintiffs, in this videotape, Santangelo states that "a couple" spoke before the Council "all the time," and the Council had to change its rules and "turn off the cameras to them."[2]  Gagnon-Smith Deposition Tr. (Doc. No. 28, Ex. 2), at 47.  These statements are capable of multiple interpretations.  Under one gloss, the frequency and duration with which the plaintiffs spoke to the Council spurred the Council to alter the rules for public comment.  Under another interpretation, the Council altered the rules for public comment because of a disagreement with the views the plaintiffs expressed.  Resolving all ambiguities and drawing all inferences in favor of the plaintiffs, the court assumes that Santangelo: (1) was referring to the plaintiffs rather than some other unnamed couple; (2) was representing the views of at least a majority of the Council; and (3) was admitting that the Council's motivation for changing the rules for public comment was disagreement with the viewpoints the plaintiffs expressed.

After the resolution passed on October 2, 2006, Smith and Gagnon-Smith addressed members of the Council on at least three additional occasions.  Smith Deposition Tr. (Doc. No. 28, Ex. 3), at 38-44; Gagnon-Smith Deposition Tr., at 26-29.  The defendants state members of the Council remained present to listen to any

---

[2] The plaintiffs concede that Santangelo did not identify the plaintiffs by name when making this statement.  Gagnon-Smith Deposition Tr. at 47; Smith Deposition Tr. at 51.

5

members of the public who wished to speak after the Council meeting adjourned. Def.'s 56(a)(1) at ¶ 31. However, the plaintiffs state in their depositions that Council members would leave or have conversations with each other during the public hearing on non-agenda items. Gagnon-Smith Tr. at 30; Smith Deposition Tr. at 38.

## IV.   DISCUSSION

### A.   Determining the Type of Forum

Defendants argue that the changes in the rules governing public comment on non-agenda items did not deprive Smith and Gagnon-Smith of any rights under the First Amendment. Mem. in Supp. of Mot. for Summ. J. ("Mem. in Supp.") (Doc. No. 28), at 14. Ascertaining whether the Council infringed upon the First Amendment rights of Smith and Gagnon-Smith requires the court to discern "the nature of the forum in which the speech occurs." Peck v. Baldwinsville Central School District, 426 F.3d 617, 625 (2d Cir. 2005). The Supreme Court has identified four types of fora for expression: (1) the traditional public forum; (2) the designated public forum; (3) the limited public forum (which is a subset of the designated public forum); and (4) the non-public forum. Id. at 625-66.

A public forum is a "place[] which by long tradition or by government fiat ha[s] been devoted to assembly and debate." Perry Education Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). This category includes streets, parks, and other venues "which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Id. (citation omitted). In a public forum, content-based restrictions are upheld "only if they are necessary to serve a

compelling state interest and are narrowly drawn to achieve that end." Peck, 426 F.3d at 626.

A designated public forum "is a place not traditionally open to public assembly and debate . . . that the government has taken affirmative steps to open for general public discourse." Peck, 426 F.3d at 626; Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 142-43 (2d Cir. 2004). "[A] designated public forum, including a limited public forum, arises only where the government intends to create one." Make the Road by Walking, 378 F.3d at 139. In general, "[s]peech in a designated public forum is entitled to the same constitutional protection as that extended to expression in a traditional public forum, so long as the state continues to designate the forum for such use." Peck, 426 F.3d at 626.

A limited public forum is a special type of designated public forum in which the state "opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." Peck, 426 F.3d at 626 (quoting Hotel Employees & Restaurant Employees Union v. City of New York Dep't of Parks & Recreation, 311 F.3d 534, 545 (2d Cir. 2002)). "[A] category of speakers or expressive activities may be excluded from a limited public forum only on the basis of 'reasonable, viewpoint-neutral rules." Bronx Household of Faith v. Community School District No. 10, __ F.3d __, 2011 WL 2150974, *4 (2d. Cir. 2011); Peck, 426 F.3d at 626 (in limited public fora, "the government may make reasonable, viewpoint-neutral rules governing the content of speech allowed").

Finally, a non-public forum is an area that has not traditionally been open to public expression nor designated for such expression by the state. Peck, 426 F.3d at

7

626. Like restrictions on speech in a limited public forum, "[r]estrictions on speech in a non-public forum need only be reasonable and viewpoint neutral." Make the Road by Walking, 378 F.3d at 143.

Numerous courts have held that city council meetings which have been opened to the public are limited public fora. See Rowe v. City of Cocoa, Fla., 358 F.3d 800, 802 (11th Cir. 2004) ("city commission meetings are 'limited' public fora"); White v. City of Norwalk, 900 F.2d 1421, 1425 (9th Cir. 1990) (city council meetings, "once opened, have been regarded as public forums, albeit limited ones"). Moreover, in prior litigation between Gagnon-Smith and the City of Middletown, the district court found that the public comment period during the Council meeting constituted a limited public forum. See Gagnon-Smith v. City of Middletown, No. 3:02CV02138(RNC), 2004 WL 725666, *1 (D. Conn. 2004). In the instant matter, the defendants argue that Council meetings are a limited public forum, Mem. in Supp. at 11-12, and the plaintiffs do not dispute this conclusion.[3] Finally, the Council meetings resemble common examples of limited public fora, which "include . . . open school board meetings." Hotel & Restaurant Employees Union, 311 F.3d at 545 (citations omitted). Therefore, the court will analyze the Council's decisions under the rules governing limited public fora.

B. Permissible Restrictions in a Limited Public Forum

In a limited public forum, "a government entity may impose restrictions on speech that are reasonable and viewpoint-neutral." Pleasant Grove City, Utah v. Summum, 129 S. Ct. 1125, 1132 (2009) (citing Good News Club v. Milford Central School, 533 U.S. 98, 106-07 (2001)). "The necessities of confining a forum to the limited and legitimate

---

[3] Where the parties agree that a forum is a limited public forum, the court may agree to this characterization. See Good News Club v. Milford Central School, 533 U.S. 98, 106 (2001).

8

purposes for which it was created may justify the State in reserving it for certain groups or for the discussion of certain topics." Rosenberger v. Rectors & Visitors of the Univ. of Va., 515 U.S. 819, 829 (1995). "[T]he operator of a limited public forum may engage in 'content discrimination, which may be permissible if it preserves the purposes of that limited forum,' but may not engage in 'viewpoint discrimination, which is presumed impermissible when directed against speech otherwise within the forum's limitations.'" Bronx Household of Faith, 2011 WL 2150974 at *4 (quoting Rosenberger, 515 U.S. at 830). "[A] State's restriction on access to a limited public forum need not be the most reasonable or the only reasonable limitation." Christian Legal Soc'y v. Martinez, 130 S. Ct. 2971, 2992 (2010) (citation omitted). In addition, a limited public forum is a type of designated public forum, and "the government may decide to close a designated public forum," Make the Road by Walking, 378 F.3d at 143. "[A] State is not required to indefinitely retain the open character of [a] facility." Perry Education Ass'n, 460 U.S. at 45-46.

Applying these principles, it is evident that the city council is entitled to restrict public comment at its meetings to topics on the agenda. See City of Madison, Joint School District No. 8 v. Wisconsin Employment Relations Comm'n, 429 U.S. 167, 178, n.8 (stating in dicta, "[p]lainly, public bodies may confine their meetings to specified subject matter"). Here, the Council adopted a resolution which accomplished precisely this: it permitted the public to comment during Council meetings on topics listed on the meeting agenda, and it permitted the public to comment after Council meetings, without a television camera, on issues that were not listed on the meeting agenda. Resolution 145-06 is fairly characterized as content-based. Whether a member of the public is

allowed to speak depends on whether the individual intends to address a subject on the Council's agenda. The individual's viewpoint on a given subject does not affect whether they are permitted to speak.

The restriction of public comment to items on the agenda is also reasonable because it serves to confine the forum "to the limited and legitimate purposes for which it was created" – in this case, facilitating the official business of the Council. "[T]here is a significant governmental interest in conducting orderly, efficient meetings [of public bodies] that are limited to a specified subject matter germane to an agenda at hand." Rowe, 358 F.3d at 804. "[A] City Council meeting is . . . just that, a governmental process with a governmental purpose. The Council has an agenda to be addressed and dealt with. Public forum or not, the usual First Amendment antipathy to content-oriented control of speech cannot be imported into the Council chambers intact." White, 900 F.3d at 1425.

The facts of this case closely track those of the unpublished case, Webb v. City of Joliet, No. 98C4871, 1999 WL 350829 (N.D. Ill. May 19, 1999). In Webb, the Joliet City Council moved a televised period of public comment on non-agenda items from the City Council meeting to a different day during what was called a "Pre-Council meeting[]." Id. at *1-*2. The plaintiff in Webb argued that these actions deprived him of his right to free speech and were targeted as silencing him in particular. Id. at *3, n.6. The court

found the Joliet City Council's policies to be content-neutral and reasonable.[4]  Id. at *5.

In the present case, this court reaches the same conclusion.

      C.      Motivation for the Rule Change

"[T]he plaintiffs do not argue that the City of Middletown is constitutionally required to allow the public to speak during the meetings of the Common Council." Mem. in Opp. (Doc. No. 28) at 5.  Instead, the plaintiffs contend that the defendants' actions were unlawful because the rule changes were made "because of the content of the plaintiffs' speech."  Id. at 6.  Put differently, the plaintiffs are claiming that the rule changes were undertaken to reduce the opportunity for the plaintiffs to voice opinions with which the Council did not agree.  As a consequence, plaintiffs argue that the rules changes were tantamount to viewpoint discrimination.

Although perhaps intuitively appealing, this argument is not supported by applicable precedent.  Rules restricting speech at the Council meetings must be viewpoint neutral, and those rules must be applied by the Council in an even-handed fashion.[5]  However, it is the rules themselves which must be viewpoint-neutral: the motivation for adopting a rule need not be viewpoint-neutral.  This distinction was clearly articulated by the Supreme Court in Hill v. Colorado, 530 U.S. 703 (2000).  In Hill, the Court upheld a law as content-neutral which prohibited individuals from knowingly

---

[4] The district court in Webb did not distinguish between designated public fora and limited public fora, and therefore examined the Joliet City Council policies under the "same standards as public fora."  Id. at *4-*5.  The Webb court nevertheless concluded that the policies did not infringe on the plaintiff's rights under the First Amendment.  Id. at *5.

[5] Here, the plaintiffs do not allege that they attempted to speak on a matter on the Council agenda and were denied the opportunity to do so during the regular meeting.  The plaintiffs also do not allege that they were denied the opportunity to speak on a topic of their choice in the period reserved for public comment after the Council meetings, or the period reserved for public comment in the monthly "community public meetings."

approaching another person within one hundred feet of a health care facility for the purposes of "oral protest, education, or counselling," without that other person's consent. Id. at 707. The legislative history for that law made it "clear that its enactment was primarily motivated by activities in the vicinity of abortion clinics." Id. at 715. However, the Court held that the law was not "viewpoint based" merely "because its enactment was motivated by the conduct of the partisans on one side of a debate" – specifically, anti-abortion activists protesting outside clinics performing abortions. Id. at 724. The Court concluded that the speech restrictions were lawful because they applied equally to anyone engaged in oral protest, education, or counselling, regardless of their views on abortion. Id. at 725.

Returning to the case at bar, the Council has adopted a Resolution which restricts when a member of the public can speak to the Council about certain topics. The restrictions apply regardless of an individual's viewpoint on a given topic. The rule itself is unquestionably viewpoint-neutral. "When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech." Good News Club, 533 U.S. at 106. Smith and Gagnon-Smith concede that the City of Middletown is not "constitutionally required to allow the public to speak during the meetings of the Common Council." Mem. in Opp. at 5. The plaintiffs, therefore, have not suffered a deprivation of their First Amendment right to freedom of speech because the Council decided to limit public comment during its meetings to items on its agenda.

    D.    <u>Freedom to Petition the Government</u>

Defendants correctly observe in their Reply Memorandum that Smith and Gagnon-Smith failed to respond to the defendants' arguments regarding any possible claim for infringement of the right to petition the Council.  See Reply (Doc. No. 29) at 1-2.  Accordingly, the court deems any such claim abandoned.  See Carone v. Mascolo, 573 F. Supp. 2d 575, 591 (D. Conn. 2008).  In any event, the right to petition the Government for a redress of grievances does not include a right to speak at the public hearing of a legislative body.  Cf. Piscottano v. Town of Somers, 396 F. Supp. 2d 187, 206 (D. Conn. 2005) (holding that the "right to petition government does not include the absolute right to speak in person to officials").

### E. Defendants' Other Arguments in Favor of Summary Judgment

Because the court concludes that the plaintiffs have not suffered a deprivation of their rights under the First Amendment, the court does not consider the defendants' alternative arguments regarding de minimus injury, qualified immunity, and legislative immunity.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [**Doc. No. 27**] is **granted**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 1st day of September, 2011.

                                     /s/ Janet C. Hall_____
                                    Janet C. Hall
                                    United States District Judge